**UNIWELD PRODUCTS, INC., David S. Pearl and Ephraim Werner, Appellants,**

v.

**UNION CARBIDE CORPORATION, Appellee.**

**No. 24355.**

United States Court of Appeals Fifth Circuit.

Aug. 15, 1967.

Certiorari Denied Jan. 29, 1968.

See 88 S.Ct. 853.

Robert M. McClosky, Miami Beach, Fla., Roger L. Davis, Fort Lauderdale, Fla., Hyman F. Glass, Alexandria, Va., John J. Donnelly, Washington, D. C., for appellants.

Walter J. Halliday, New York City, Darrey A. Davis, Miami, Fla., Nathaniel G. Sims, New York City, Nims, Halliday, Whitman, Howes & Collison, New York City, for appellee.

Before WASHINGTON,* TUTTLE and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This is an interlocutory appeal from the denial by the trial court of a motion entered by the appellants here, the defendants in a suit in the Southern District of Florida, to disqualify a law firm of Miami, Florida, from representing the plaintiff on the ground that such representation offends the ethical standards set out in Canons 6 and 37, of the Canons of Professional Ethics.[1]

The underlying action here is a suit for trademark infringement and unfair competition brought by Union Carbide v. Uniweld Products, Inc., and its president, David S. Pearl. The claimed disqualification rests upon the prior representations of the present defendants by the firm of Smathers and Thompson in two cases involving claims of patent infringement and unfair competition. In 1959, Union Carbide Corporation (the plaintiff here) filed a complaint charging Uniweld (then known by its previous name, Universal Cutting & Welding Corporation), its President Pearl, and others, charging patent infringement and unfair competition. The defendants retained Honorable David W. Dyer, then a partner in the firm of Smathers, Thompson and Dyer, to represent them. After Judge Dyer's appointment to the bench, the representation was continued by another partner in the firm, Louis S. Bonsteel. A consent judgment was entered in this action in 1960, and jurisdiction was retained by the court for the purpose of enforcing compliance with the judgment. The last activity undertaken by the firm with respect to this suit was the delivery of certain exhibits back to the defendants in September, 1964.

---

* Senior Circuit Judge of the D. C. Circuit, sitting by designation.

1. The Canons referred to are as follows: "6. Adverse Influences and Conflicting Interests. * * * The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers for employment from others in matters adversely affecting any interest with respect to which confidence has been reposed."
"37. Confidence of a Client. It is the duty of a lawyer to preserve his client's confidence. This duty outlasts the lawyer's employment and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client."

In October, 1962, Pearl consulted the Smathers firm on another matter involving charges of unfair competition being made by the Harris Calorific Company. This matter did not reach the litigation state. Negotiations were undertaken and a conference was eventually held in March, 1963, at which the defendants were represented by Mr. Bonsteel. The record discloses that the correspondence between the parties ended with a letter from Pearl to Harris Calorific dated September 16, 1963. In October, 1964, Bonsteel wrote Pearl that there appeared to be nothing further required in the matter and submitted his statement for services. Pearl paid the statement and in his transmittal letter advised that he had heard nothing from Harris Calorific in over a year and considered the matter closed.

In April, 1966, another partner of the Smathers firm, a Mr. Yancey, was reached by a New York trademark law firm about the possibility of representing Union Carbide in a trademark infringement suit against Uniweld. At that time Pearl was not named to Mr. Yancey as a defendant in the suit, and upon a search of the client index files of the Smathers firm, there was no record of there having been a representation of any company named Uniweld, Inc., it appearing that the index had not been changed to show the change of name from Universal Cutting & Welding Equipment Corporation to the present name. Yancey accepted the representation of Union Carbide.

Several months later the New York firm again got in touch with Yancey and advised him that it had been determined to make Pearl and another officer of Uniweld joint defendants in the case. Yancey obtained their addresses to be included in the complaint, but did not again check the client index files.

When, on August 3rd, process was served upon the defendants, Pearl immediately got in touch with Bonsteel. Then it immediately became apparent that Bonsteel's own firm appeared as counsel for the plaintiff. It is undisputed that following a firm conference between Bonsteel and Yancey, discussions followed with the New York firm with a view toward withdrawing from the case. In the meantime, the defendant's patent attorney, a Mr. Glass, of Virginia, was contacted by Pearl and he in turn immediately got in touch with Bonsteel and demanded that the Smathers firm give up its representation of Union Carbide in the case. When Bonsteel and Yancey made it plain that they were making inquiries that would enable them to act properly in the matter, Glass immediately filed a motion in the district court charging the Smathers firm with a violation of the Canons of Ethics, and requesting that the court disqualify the firm from representing Union Carbide.

After a hearing was held on the motion, the district court denied the requested relief. Then, on motion for rehearing, the district court adhered to its prior denial. These are the orders that are on appeal here.

First, we conclude that this is an appealable order, in light of the decision of this court in Tomlinson v. Florida Iron & Metal, Inc., 5 Cir. (1961), 291 F.2d 333.

Elaborating somewhat upon the standards stated by the trial court in determining such a case as this, we are satisfied that the question before the trial court was whether the Miami law firm was ethically free to undertake the representation of Union Carbide here, if the issues involved in the present suit are not similar to any which they had previously litigated on behalf of Uniweld, and if no confidences had been reposed in the course of the entire representation having any possible bearing on the issues in the present suit.

It is perfectly plain that the previous representations had, to all practical purposes, completely terminated, as was found by the trial court. This appears to have been fully recognized by all parties to the then pending matters. Although the appellants contend that in this alleged trademark infringement and

unfair competition suit, there may be some similar questions that arose in the patent infringement case, they completely failed to show similarity. Also, while they charge that the law firm may have obtained information in prior representation that could be utilized in the present litigation, there was also an utter lack of any proof of any such knowledge or information.

The issues before the trial court were essentially issues of fact. We can not determine that the trial court's resolution of these issues was clearly erroneous.

The judgment is affirmed.